Docket No. 08-15655
———————

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT
———————

**EDWARD BORACCHIA, et al.,**

**Plaintiffs-Appellants,**

**v.**

**BIOMET, INC.,**

**Defendant-Appellee.**

———————————————————————————————

On Appeal from the Grant of Summary Judgment
District Court Case No. CV 07-650-WFN
In the United States District Court for
the Northern District of California
(Hon. Wm. Nielson, U.S.D.J., Presiding)

## BRIEF OF APPELLANTS

MITCHELL A. KRAMER, ESQ.  KAREN L. LANDAU, ESQ.
BARBARA H. KRAMER, ESQ.  Attorney at Law
KRAMER & KRAMER     2626 Harrison Street
1077 Rydal Rd., Suite 100  Oakland, California 94612
Rydal, PA 19046      (510) 839-9230
(215) 887-9030      (510) 839-0535 (fax)
(215) 887-9240 (fax)

Attorneys for Appellants
Edward Boracchia, et al.

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 & 28, appellant states that there is no publicly held corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT...............................i

TABLE OF AUTHORITIES........................................iv

I.  JURISDICTION AND TIMELINESS.............................1

II.  ISSUES PRESENTED FOR REVIEW............................1

IV.  STATEMENT OF THE CASE..................................2

   1.  Course of Proceedings ...................................2

   2.  Statement of Facts .....................................3

V.  STANDARD OF REVIEW......................................7

VI.  SUMMARY OF ARGUMENT....................................8

VII.  ARGUMENT.............................................10

A.  THE DISTRICT COURT ERRED IN CONCLUDING THAT THE STATUTE OF LIMITATIONS SUPPLIED BY THE UNIFORM COMMERCIAL CODE APPLIED TO THE CONTRACT IN THIS CASE...................................10

   The Challenge to the Applicability of the U.C.C. and the Four-Year Statute of Limitations Was Not Waived. ..................18

B.  THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS, BECAUSE UNDER INDIANA LAW, THE APPLICABLE STATUTE OF LIMITATIONS IS 20 YEARS.................20

C.  ALTERNATIVELY, THE DISTRICT COURT ERRED IN CONCLUDING THAT BORACCHIA'S CLAIMS WERE TIME-BARRED, BECAUSE CALIFORNIA PUBLIC POLICY PROHIBITS APPLICATION OF FOREIGN LAW IN CALCULATING THE STATUTE OF LIMITATIONS......................................23

   1.  California Law Regarding Conflict of Laws ...............25

   2.  California Policy Regarding the Protection of Independent Wholesale Sales Representatives is Fundamental. ..............26

   3.  California's Interest in the Contract is more Substantial than Indiana's. .........................................28

   4.  Under California Law, The Statute Of Limitations Did Not Accrue Until June 9, 2006. ..................................30

VIII.  CONCLUSION..........................................35

STATEMENT OF RELATED CASES....................................36

CERTIFICATE OF COMPLIANCE....................................37

# TABLE OF AUTHORITIES

**Federal Cases**

*389 Orange St. Partners v. Arnold*, 179 F.3d 656 (9th Cir. 1997) 25

*A.M. Capen's Co., Inc. v. American Trading & Production Co.*, 973 F.Supp. 247, 258 (D. P.R. 1997), *reversed on other grounds,* 202 F.3d 469 (1st Cir.), *cert. denied,* 531 U.S. 823 (2000)...... 13

*Abogados v. AT&T,* 223 F.3d 932 (9th Cir. 2000) ................ 8

*Anderson v. Liberty Lobby,* 477 U.S. 242 (1986)................ 8

*Buono v. Norton*, 371 F.3d 543, 545 (9th Cir. 2004) ............ 7

*Carmen v. San Francisco Unified School Dist.,* 237 F.3d 1026 (9th Cir. 2001) ................................................ 18

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)................ 8

*Clement v. City of Glendale,* 518 F.3d 1090 (9th Cir. 2008) .... 18

*Enervations, Inc. v. Minnesota Mining & Mfg. Co.,* 380 F.3d 1066 (8th Cir. 2004)............................................. 17

*Erlin v. United States,* 364 F.3d 1127 (9th Cir. 2004) ......... 8

*Franconia Associates v. United States,* 536 U.S. 129(2002)..... 31

*Harrell v. 20th Century Ins. Co.,* 934 F.2d 203 (9th Cir. 1991). 19

*Hernandez v. Spacelabs Med. Inc.,* 343 F.3d 1107 (9th Cir. 2003) 8

*Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003) ........... 8

*Lewis v. Methodist Hosp., Inc.*, 326 F.3d 851 (7th Cir. 2003) .. 21

*Monarch Beverage Co., Inc. v. Tyfield Importers, Inc.*, 823 F.2d 1187 (7th Cir. 1987)........................................ 16

*Roehm v. Horst,* 178 U.S. 1 (1900)............................ 31

*Romain v. Shear,* 799 F.2d 1416 (9th Cir. 1986), *cert. denied,* 481 U.S. 1050 (1987)........................................... 20

*Sally Beauty Co. v. Nexxus Products Co.,* 801 F.2d 1001 (7th Cir. 1986) ................................................. 12, 17

*Stutz v. Minnesota Mining Mfg. Co.,* 947 F. Supp. 399 (D. Ind. 1996) ................................................. 16, 17

*Ventura Mobilehome Community Owners Association v. City of San Buenaventura*, 371 F.3d 1046 (9th Cir. 2004) .................. 8

*Voelker v. Porsche Cars North America.,* 353 F.3d 516 (7th Cir. 2003) ..................................................... 11

**State Cases**

*America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1 (2001) ........................................................ 28

*Brack v. Omni Loan Co.*, 164 Cal.App.4[th] 1312 (Cal. App. 2008) 27, 28, 29

*Discover Bank v. Superior Court,* 36 Cal.4[th] 148 (2005) .... 25, 28

*Dow Chemical Co. v. Ebling*, 723 N.E.2d 881 (Ind. App. 2000), *aff'd in part & vacated in part*, 753 N.E.2d 633 (Ind. 2001) . 16

*Great N. Ins. Co v. Buddy Gregg Motor Homes, Inc.,* 2002 U.S. Dist. LEXIS 7830 (S.D. Ind. 2002) .......................... 16

*Hanson Sales & Marketing v. VSA,* 619 N.W.2d 307 (table case published at 43 UCC Rep. Serv.2d 270) (Wis. Ct. App. 2000) .. 13

*INB Nat. Bank v. Moran Elec. Service, Inc.*, 608 N.E.2d 702 (Ind. App. 1993) ................................................. 20

*Indiana State Police Dept. v. Turner,* 577 N.E.2d 598  (Ind. App. 1991) ....................................................... 21

*Insul-Mark Midwest v. Modern Materials,* 612 N.E.2d 550 (Ind. 1993) ................................................. 12, 16

*Klussman v. Cross Country Bank*, 134 Cal.App.4[th] 1283 (2005) ... 28

*Ludwig v. Ford Motor Co.,* 510 N.E.2d 691  (Ind. App. 1987).... 11

*Marter v. City of Vincennes*, 82 N.E.2d 410 (Ind. App. 1948)20, 21

*Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4[th] 459 (1992) ... 25

*Ogden Martin Systems, Inc. v. Whiting Corp.,* 179 F.3d 523 (7th Cir. 1999) ................................................. 16

*Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683 (Ind. App. 2006) ................................................... 20

*Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479 (1996) 31, 32, 34

*Steiner Corp. v. American District Telegraph*, 683 P.2d 435 (Id. 1984) ................................................... 11

*Terre Haute v. Brown*, 483 N.E.2d 786 (Ind. App. 1985)......... 21

*Timberlake v. J. R. Watkins Co.*, 209 N.E.2d 909 (Ind.App. 1965)20

**Statutes**

28 U.S.C. § 1332(a)(1)........................................... 1

Cal. Civ. Code § 1738.10.................................... passim

Cal. Civ. Code § 1738.12....................................... 15

Cal. Civ. Code § 1738.13(a)......................... 24, 26, 29

Cal. Civ. Code § 1738.13(e)................................... 27

Cal. Code Civ. P. § 337........................................ 11

Ind. Code § 24-4-7-4...................................... 15, 17

Ind. Code § 26-1-2-102......................................... 11

Ind. Code § 34-11-2-11 ..................................... 20, 21

Ind. Comm. Code § 26-1-2-725(1).............................. 11

U.C.C § 2-106(1).............................................. 12

**Rules**

Fed. R. App. P. 4(a)(1)(A).................................... 1

Fed. R. Civ. P. 56(c)......................................... 8

**Treatises**

1 White & Summers, *Uniform Commercial Code*, § 2-2 (5th ed. 2007)

........................................................ 12

*Restatement (Second) of* Contracts (1979)...................... 31

*Restatement of Contracts* (1932)............................... 31

*Restatement Second of Conflict of Laws*........................ 25

# I. JURISDICTION AND TIMELINESS

This is an appeal from the judgment of dismissal, based on the district court's grant of summary judgment in favor of the defendant on February 25, 2008.  I E.R. 1-13, II E.R. 36-37.[1] Appellant filed a timely notice of appeal on March 25, 2008.  II E.R. 1-2.  Fed. R. App. P. 4(a)(1)(A).

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  The district court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

# II. ISSUES PRESENTED FOR REVIEW

1.  Did the district court err in applying the U.C.C. four-year statute of limitations to a contract under which the plaintiffs were employed as a sales representative for the manufacturer defendant?

2.  Did the district court err in failing to apply Indiana's 20-year statute of limitations, applicable to contracts in writing entered into before 1982?

3.  Did the district court err in applying Indiana, rather than California law to the question when the statute of

---

1 Volume I of the Excerpts of Record (E.R. 1-34) contains the district court's order granting summary judgment and the reporter's transcript of the hearing on the motion.  Volume II of the Excerpts of Record contains the other materials needed to resolve the questions presented on appeal.  Duplicative exhibits have been omitted.

limitations accrued, when application of Indiana law violates a fundamental policy of California?

# IV. STATEMENT OF THE CASE

## 1. *Course of Proceedings*

On January 31, 2007, plaintiffs Edward Boracchia and Boracchia & Associates (hereafter "Boracchia") filed a complaint against defendant Biomet, Inc.  Boracchia alleged that defendant breached their contract by improperly terminating the agreement.  II E.R. 189-92.  Boracchia further averred that Biomet breached their contract by failing and refusing to make payments under Biomet's long-term commission program.  Based on these facts, Count One of the complaint alleged a breach of contract.  *Id.*  Count Two alleged a violation of the California Independent Wholesale Representative Contractual Relations Act of 1990, Cal. Civ. Code § 1738.10 *et seq.*  II E.R. 192.  Count III alleged that defendant engaged in unfair competition, under Cal. Bus. & Prof. Code § 17200 *et seq.*  II E.R. 193.  The defendant answered the complaint on March 16, 2007.  II E.R. 179-85.

In November, 2007, Biomet moved for summary judgment, contending that the action was barred by the statute of limitations.  Biomet took the position that the case was governed by the Uniform Commercial Code ("U.C.C.") and that under both Indiana and California law, the statute of limitations was four years.  Biomet further contended that the statute ran from the

date on which Biomet claimed it had initially terminated the contract, July 28, 1995.

Boracchia opposed this motion, arguing that the statute of limitations did not accrue until Biomet terminated Boracchia as its sales representative on June 9, 2006. At oral argument, Boracchia contended that, regardless when the statute of limitations accrued, the complaint was filed timely, because the applicable statute of limitations under Indiana law was 20 years. I E.R. 31-32. Boracchia also contended that under California law, the statute would not accrue until termination of the parties' relationship.

On February 25, 2008, after a hearing on February 19, 2008, the district court granted Biomet's motion for summary judgment. I E.R. 1-13.

## 2. Statement of Facts

On February 23, 1979, appellant Edward J. Boracchia, on behalf of Boracchia & Associates, entered into a "Distributorship Agreement" ("Agreement") with Biomet, Inc. ("Biomet"), a manufacturer of hip and knee prostheses for human implantation in total hip and knee replacement surgeries. II E.R. 39, ¶¶2-3; 45-58. Under the Agreement, Boracchia was appointed as the exclusive sales representative to market Biomet products throughout northern California. *See* II E.R. 39, ¶¶ 2-3; I E.R. 3. In order to maximize sales of Biomet products, Boracchia

maintained an extensive sales staff.  Boracchia's staff routinely traveled to hospitals located within the assigned territory, met with orthopedic surgeons to demonstrate and promote the benefits of Biomet implant products and devices, and regularly attended surgery to provide technical assistance to surgeons during procedures.  *See* II E.R. 39, ¶4.

The Agreement included provisions specifying and limiting how Biomet could terminate or modify the Agreement.  The Agreement stated that Biomet could terminate the agreement if Boracchia fell below 90% of the sales quota and no other distributor of similar longevity had done so.  I E.R. 3; II E.R. 48.  The Agreement provided for a retirement income program under which a representative was entitled to be paid a percentage of his total net sales as defined in the agreement.  A representative obtained a vested interest in the long-term commission program after 10 years of continuous service and upon reaching the age of 55.  I E.R. 3; II E.R. 50-52.  The Agreement also provided "This agreement shall be construed under and be controlled by the laws of the state of Indiana, as they may exist from time to time."  II E.R. 53.

Boracchia successfully created a stable and growing market for Biomet hip and knee implants throughout his northern California territory.  On June 30, 1995, Greg Sasso, then Biomet's Director of Sales, wrote a letter to Boracchia stating that Biomet "has elected to terminate the Distributorship

Agreement" effective July 28, 1995.  I E.R. 3; II E.R. 40, ¶9, 60-61.  The letter further stated, however, that Boracchia was "not being terminated as a Biomet distributor."  II E.R. 60-61.  Biomet sent an amendment to the 1979 Agreement, which it directed Boracchia to sign.  *Id*.  Biomet's letter offered Boracchia two options: an amended written agreement or an at-will relationship without a written agreement that either party could terminate on 30 days notice.  I E.R. 4-5; II E.R. 60-61, 176-77.

Boracchia did not sign the amended agreement proposed by Biomet, but responded in writing on July 19, 1995.  Boracchia rejected Biomet's termination, refused to execute Biomet's proposed amendment, and stated that Boracchia considered the existing contract to remain in effect.  I E.R. 4; *see* II E.R. 41, ¶10; 63-64.

Biomet responded on August 9, 1995, enclosing another draft of amendments to the Agreement, and purportedly addressing "some" of the concerns Boracchia had expressed in the July 19 letter.  *See* II E.R. 41, ¶11; 66.  Biomet reiterated that it believed it had terminated the agreement on July 31, 1995.  I E.R. 4.

Boracchia did not accept Biomet's new proposal, but on September 19, 1995, wrote that he remained willing to negotiate a written modification to the parties' 1979 agreement, and even proposed an amendment.  I E.R. 4; II E.R. 41, ¶12, 68.  On October 12, 1995, Biomet again rejected Boracchia's proposal,

referencing the alleged termination of the Agreement on July 31, 1995. II E.R. 41, ¶13, 70.

On November 3, 1997, Biomet wrote to counsel for Plaintiffs in connection with another lawsuit.  Biomet again stated that the agreement between the parties had been terminated on July 31, 1995.  I E.R. 5.  The letter noted that it was unlikely that Mr. Boracchia would have submitted a counter proposal if he did not acknowledge the termination of the 1979 Agreement.  *Id.;* II E.R. 175-76.  On December 2, 1997, Biomet sent another letter to Boracchia's counsel, stating that the parties appeared to disagree about the status of the relationship between the parties, but "[i]t is Biomet's position that the Agreement dated February 23, 1979 was terminated and Biomet has been conducting and will continue to conduct its business accordingly."  I E.R. 5; II E.R. 178.

After the 1995 correspondence, Boracchia continued to serve as Biomet's exclusive sales representative under the same terms and conditions set forth in the 1979 agreement until June 9, 2006, when Biomet ended the relationship.  II E.R. 41.  Boracchia continued doing exactly what it had done prior to the June 30, 1995 letter from Biomet.  Since the parties never reached agreement on a different contract, Boracchia considered the 1979 agreement to remain in effect, and so advised Biomet on numerous occasions.  *Id.* at ¶14.

6

David Montgomery, who served as Biomet's Vice-President of Sales between 1996-2006, conceded that Biomet knew that Boracchia considered the 1979 Agreement to have continued in effect:

> Q.   Subsequent to this letter being delivered, did you understand that Mr. Boracchia took the position that the Agreement, in fact, had not been terminated?
>
> A.   He made that clear, yes.
>
> Q.   And is it fair to say that the parties essentially agreed to disagree on that point?
>
> A.   I think that's fair.

II E.R. 90.

On June 9, 2006, Biomet terminated Boracchia pursuant to a letter dated May 9, 2006.  I E.R. 5; II E.R. 41-42, 72-74, 90-91.  On January 11, 2007, Mr. Boracchia wrote to Biomet, requesting initiation of the long-term commission program.  I E.R. 5; II E.R. 76.  Biomet did not make payments to Boracchia in accordance with the terms of the 1979 Agreement, II E.R. 42, but took the position that Boracchia's employment had been "at-will," and that Boracchia's participation in the long-term commission program had been terminated as of 1995.

On January 31, 2007, appellants filed their complaint in the United States District Court.  II E.R. 189.

# V.  STANDARD OF REVIEW

The district court's grant of summary judgment is reviewed *de novo*.  *Buono v. Norton*, 371 F.3d 543, 545 (9th Cir. 2004).  Summary judgment is appropriate when there are no questions of

material fact. *Anderson v. Liberty Lobby,* 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(c). This Court reviews a grant of summary judgment to determine whether there is a genuine issue of triable fact, drawing every reasonable inference in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The question whether the statute of limitations bars a complaint is reviewed *de novo*. *Ventura Mobilehome Community Owners Association v. City of San Buenaventura*, 371 F.3d 1046, 1050 (9th Cir. 2004). A ruling on the appropriate statute of limitations is a question of law reviewed *de novo*. *Hernandez v. Spacelabs Med. Inc.,* 343 F.3d 1107, 1112 (9th Cir. 2003).

The question whether a choice of law clause is enforceable is a legal one, reviewed *de novo*. *Abogados v. AT&T,* 223 F.3d 932, 934 (9th Cir. 2000). The question of when a statute of limitations accrues is a question of law, reviewed *de novo*. *Erlin v. United States,* 364 F.3d 1127, 1130 (9th Cir. 2004). The district court's interpretation of state contract law is reviewed *de novo*. *Jorgensen v. Cassiday*, 320 F.3d 906, 914 (9th Cir. 2003).

## VI.  SUMMARY OF ARGUMENT

The district court erred in granting summary judgment in favor of the defendant, because it applied an incorrect statute of limitations. The court fundamentally misconstrued the nature

of the agreement between the parties.  The contract in this case
governed the plaintiffs' provision of services to the defendant.
Contracts that govern the sale of services, rather than goods, do
not fall within the Uniform Commercial Code.  Accordingly,
because the contract in this case governed plaintiff Boracchia's
provision of services to Biomet, the lower court erred in
applying the Indiana statute of limitations drawn from the
Uniform Commercial Code.

The court should have applied Indiana's general statute of
limitations for written contracts entered into before 1982.  That
statute of limitations prescribes a period of 20 years.  Had the
court applied the correct statute of limitations, it would be
patently clear that appellants timely filed their complaint.

In the alternative, the district court erred by failing to
apply California law to the question of when the statute of
limitations period accrued.  California and Indiana law differ on
accrual of the statute of limitations.  Although the contract
contained a term providing for application of Indiana law,
applying Indiana law to this contract violates a fundamental
California policy regarding the protection of independent
wholesale sales representatives.  Therefore, under the conflict
of laws principles followed by California courts, the court was
required to apply California law to the question of when the
statute of limitations accrued.

Instead, the court, applying Indiana law, mistakenly concluded that accrual occurred when defendant Biomet purported to terminate the contract on June 30, 1995.  Although Biomet claimed it was terminating plaintiff Boracchia's contract, when plaintiff declined to accept Biomet's proposed new contract or various amendments, Biomet continued to engage Boracchia under the same terms and conditions previously in effect.  Under California law, Biomet's June 30, 1995, letter was an anticipatory repudiation of the contract that did not trigger Boracchia's duty to sue.  It was not until June 9, 2006, when Biomet terminated its relationship with Boracchia, that an actionable breach occurred.

For all of these reasons, this Court should reverse the district court's grant of summary judgment and remand for further proceedings.

# VII.  ARGUMENT

## A.  THE DISTRICT COURT ERRED IN CONCLUDING THAT THE STATUTE OF LIMITATIONS SUPPLIED BY THE UNIFORM COMMERCIAL CODE APPLIED TO THE CONTRACT IN THIS CASE.

The district court concluded that the applicable statute of limitations was provided by the Uniform Commercial Code (hereafter U.C.C.), as adopted in Indiana.  I E.R. 6.[2]  The court

---

2 Whether the U.C.C. applies is important because Indiana otherwise provides a 20-year statute of limitations for the

found that the choice of law clause in the 1979 agreement was enforceable, and that Indiana law applied.  I E.R. 6.  The district court erred, because the contract at issue in this case did not involve the sale of goods. At a minimum, there is a genuine issue of material fact about whether the U.C.C. applies to this contract.

Article II of the U.C.C. applies to contracts for the sale of goods.  *Voelker v. Porsche Cars North America.,* 353 F.3d 516, 523 (7th Cir. 2003); *Ludwig v. Ford Motor Co.,* 510 N.E.2d 691, 694-95 (Ind. App. 1987); *Steiner Corp. v. American District Telegraph,* 683 P.2d 435, 438 (Id. 1984*).*  Section 2-106(1) of the U.C.C. defines a sale as "the passing of title from the seller to the buyer for a price."  Thus, a sale occurs only with the transfer of title.  *Voelker,* 353 F.3d at 523.[3]

The version of the U.C.C. adopted in Indiana applies only to the sale of goods.  Ind. Code § 26-1-2-725(1) provides, in pertinent part:

> An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued.

(West Ann. 2008).  Section 26-1-2-102 clarifies that "unless the context otherwise requires, IC 26-1-2 applies only to

---

breach of a written contract entered into before 1982.  *See infra* at 18-20.
3 The U.C.C., as adopted by Indiana, provides for a four-year statute of limitations for contracts governing the sale of goods. Ind. Code § 26-1-2-725(1) (West 2008).  California provides for a four-year statute of limitations for causes of action arising out of a written contract.  Cal. Code Civ. P. § 337 (Deering 1991).

transactions in goods." By its plain language, section 26 applies only to a sale of goods.

The U.C.C. may be applied to contracts involving both the sale of goods and of services, if the sale of goods is the "predominate thrust" of the contract. *Insul-Mark Midwest v. Modern Materials,* 612 N.E.2d 550, 555 (Ind. 1993) (holding that contract for the coating of rust screws was predominately one for services, even though it also involved the sale of the coating product). But, when a sale of goods does not occur or the service portion of the contract predominates, the U.C.C. does not apply. *Id.*

A distributor is differentiated from a sales representative or sales agent by the fact that a distributor purchases and takes title to goods from a manufacturer or other entity. A "distributorship" is characterized by the transfer of title from the seller to the buyer, while a sales agent markets goods on the owner's behalf. *See* 1 White & Summers, *Uniform Commercial Code*, § 2-2 (5th ed. 2007). Courts have applied the U.C.C. to disputes over distributorships. *E.g., Sally Beauty Co. v. Nexxus Products Co.,* 801 F.2d 1001, 1006 (7th Cir. 1986). But, courts equally have concluded that the U.C.C. does not apply to contracts involving brokers or agents, even when the agency relationship involved the marketing of goods for sale. *Insul-Mark Midwest v. Modern Materials,* 612 N.E.2d at 555; *A.M. Capen's Co., Inc. v. American Trading & Production Co.*, 973 F.Supp. 247, 258 (D. P.R.

12

1997) (because of mixed character of many distributorships, whether the U.C.C.'s statute of frauds applies must be determined on a case by case basis), *reversed on other grounds,* 202 F.3d 469 (1st Cir.), *cert. denied,* 531 U.S. 823 (2000); *Hanson Sales & Marketing v. VSA,* 619 N.W.2d 307 (table case published at 43 U.C.C. Rep. Serv.2d 270) (Wis. Ct. App. 2000).

Here, the U.C.C. and Ind. Code § 26-1-2-725(1) did not apply for two reasons: the contract did not involve the sale of goods and the contract governed the provision of services only. The contract at issue in this case was one under which Boracchia acted as a sales representative for Biomet and was compensated solely based on commissions received from sales. II E.R. 81 (Montgomery Deposition at 8); II E.R. 39-40, 46-47, 81-82, 182. While the parties' contract was entitled "Distributorship Agreement," the contract did not govern the sale of goods between the parties. II E.R. 39, 81. Indeed, David Montgomery, the former Vice-President of Biomet sales, testified that "the term distributor, in its truest sense, was probably a misnomer, in that at no time during my tenure with Biomet did distributors purchase or take title to the products." II E.R. 81. Scott Cureton, an area Vice-President of Biomet, whose declaration defendant submitted in support of its motion for summary judgment, concurred that Boracchia did not take title to Biomet's products and explained that Boracchia's job was to solicit orders for the direct sale of Biomet products. II E.R. 182. Appellant

13

Boracchia described himself in his sworn declaration as Biomet's "exclusive commissioned sales representative" in northern California."  II E.R. 39.

The record shows that Boracchia did not purchase and resell Biomet products.  II E.R. 82.  Rather, Boracchia marketed Biomet's goods for sale to third parties, namely hospitals and medical facilities, which purchased the prostheses directly from Biomet.  II E.R. 82.  Boracchia and his employees acted as sales representatives and agents for Biomet, educating and providing information to prospective buyers, and interacting with surgeons and hospital employees.  II E.R. 39-40.  Biomet had to approve all pricing, including discounts.  II E.R. 54, 57-59.  While Boracchia was permitted to market certain products at a discount, down to a floor price established by Biomet, any discounts resulted in a diminution both of his dollar and percentage commission.  II E.R. 82.  All of these facts differentiate the contract in this case from a true distributorship under which a party purchases goods from a manufacturer or importer for resale.

Boracchia cannot be classified as a distributor under either California or Indiana law.  Rather, both states, which have enacted laws governing contractual relationships between principals and their commissioned sales representatives, categorize Boracchia's activities as those of a wholesale sales representative.

14

Ind. Code § 24-4-7-4 defines a wholesale sales representative as a person who:

> (1) contracts with a principal to solicit wholesale orders in Indiana; and[4]
> (2) is compensated, in whole or in part, by commission.
> This term does not include a person who places orders or purchases on the person's own account for resale.

Cal. Civ. Code § 1738.12 defines a wholesale sales representative as "any person who contracts with a manufacturer, jobber or distributor for the purpose of soliciting wholesale orders" and is compensated, in whole or part, by commission. California excludes from its definition a person who places orders or purchases exclusively for his own account for resale, or a person who sells or takes orders for direct sale to the ultimate consumer. *Id.* Thus, both states explicitly exclude from their definition of wholesale sales representative a distributor, which by definition purchases goods for resale. Boracchia falls within the definition of a wholesale sales representative under California law, because he contracted with a

---

4 Ind. Code § 24-4-7-3 defines a principal as a person who
    (1) manufactures, produces, imports, sells, or distributes a product for wholesale;
    (2) contracts with a sales representative to solicit wholesale orders for the product; and
    (3) compensates the sales representative, in whole or in part, by commission.

manufacturer [Biomet] to solicit wholesale orders for its products and was compensated based on commission.[5]

Therefore, despite the contract's title, it was an agency contract for Boracchia's services, not a contract for the sale of goods, and outside the scope of the U.C.C.  *Insul-Mark Midwest v. Modern Materials,* 612 N.E.2d at 555-56; *Meisenhelder v. Zipp Express, Inc.*, 788 N.E.2d 924, 927 (Ind. App. 2003); *Dow Chemical Co. v. Ebling*, 723 N.E.2d 881, 904-05 (Ind. App. 2000), *aff'd in part & vacated in part*, 753 N.E.2d 633 (Ind. 2001); *Ogden Martin Systems, Inc. v. Whiting Corp.,* 179 F.3d 523, 529 (7th Cir. 1999); *Great N. Ins. Co v. Buddy Gregg Motor Homes, Inc.,* 2002 U.S. Dist. LEXIS 7830 (S.D. Ind. 2002).  The U.C.C. does not govern contracts for services, even when those services are designed to assist the sale of goods.  *See Insul-Mark Midwest,* 612 N.E.2d at 555-56.

The district court relied on two inapposite cases, *Monarch Beverage Co., Inc. v. Tyfield Importers, Inc.*, 823 F.2d 1187, 1190 (7th Cir. 1987) and *Stutz v. Minnesota Mining Mfg. Co.,* 947 F. Supp. 399 (D. Ind. 1996), to conclude that the statute of limitations prescribed by the U.C.C. governed this case.  Both cases are readily distinguishable, because those cases (and other cases cited by the appellees in the court below) involved distributors who took title to the goods in question.  For

---

5 Boracchia did not qualify as a wholesales sales representative under Indiana law, because he did not solicit sales there.  Ind. Code § 24-4-7-4(1).

example, in *Monarch Beverage Co., Inc. v. Tyfield Importer,* the plaintiff was a wholesale wine dealer that <u>purchased</u> sparkling wines from the defendant.  823 F.3d at 1189.  Similarly, in *Stutz,* the plaintiff sold and installed 3M products.  While the *Stutz* court found that the agreement between Stutz and 3M had the "predominate thrust" of accomplishing the sale of goods, there is no indication that title did not transfer from 3M to the distributor/buyer.  947 F.Supp. at 402.  *Cf. also Enervations, Inc. v. Minnesota Mining & Mfg. Co.,* 380 F.3d 1066, 1069 (8th Cir. 2004).  The cases relied on by the district court thus involved the transfer of title from an importer or manufacturer to a buyer who resold the goods.  Additionally, all of the cases relied on by the *Stutz* court involved contracts governing a sale and the transfer of title from the manufacturer seller to a buyer who distributed the goods for resale.  *Sally Beauty Co.,* 801 F.2d at 1003; *American Suzuki Motor Corp. v. Kummer,* 65 F.3d 1381, 1383-84 (7th Cir. 1995)(dealership contract governed the sale and servicing of Suzuki motorcycles under which the dealer purchased the motorcycles for resale).  None of the cases relied upon by the court or the defendant involved a situation like the present case in which the "distributor" did not take title to the goods, but instead acted merely as a sales representative.

The contract between Boracchia and Biomet, while entitled "Distributorship Agreement" governed an agency or sales representative relationship, not one involving a distributorship.

17

II E.R. 81-82.  David Montgomery so testified in his deposition. *Id.*  Accordingly, the district court erred in concluding that Ind. Code § 26-1-2-725(1) applied to the contract, because the contract governed only the provision of services and did not involve the sale of goods.

### The Challenge to the Applicability of the U.C.C. and the Four-Year Statute of Limitations Was Not Waived.

In the court below, appellant did not concede that the U.C.C.'s statute of limitations applied to this case.  I E.R. 3-4, 16-17.  While plaintiff Boracchia did not address the applicability of the U.C.C. in his written response to the motion for summary judgment, that omission occurred because the facts supplied by the defendant, in its motion, and by the plaintiffs, in their response, made plain that the U.C.C.'s statute of limitations was inapplicable.  *See Tucker v. Interscope Records,* 515 F.3d 1019, 1030 (9th Cir. 2008); *Carmen v. San Francisco Unified School Dist.,* 237 F.3d 1026, 1030-31 (9th Cir. 2001); *see also Clement v. City of Glendale,* 518 F.3d 1090, 1097 (9th Cir. 2008).  By submitting the Montgomery deposition as an exhibit to counsel's declaration, Boracchia supplied undisputed facts that he and his company acted as a sales representative, not a distributor.  II E.R. 39, 81-82.  Biomet did not dispute these facts, but only argued that the U.C.C. governed distributorship contracts generally.

18

Furthermore, at oral argument, plaintiff clearly voiced the position that applicable Indiana law provided for a 20-year period of limitation. I E.R. 16-17. The court below rejected this contention, relying solely on the contract's title while disregarding Boracchia's duties under the contract, the fact that title did not transfer to Boracchia, and the method of compensation.

The court addressed and rejected Mr. Boracchia's argument that the U.C.C. did not supply the statute of limitations. I E.R. 6-7; *see Northwestern Environmental Advocates v. National Marine Fisheries Service,* 460 F.3d 1125, 1133 (9th Cir. 2006). Accordingly, the argument is not waived. *Harrell v. 20th Century Ins. Co.,* 934 F.2d 203, 205 n.1 (9th Cir. 1991).

Moreover, while the question whether the U.C.C. applies to a particular contract is one of fact, the question whether the U.C.C. applies to a sales representation contract is a legal one. *Cf. Tucker,* 515 F.3d at 1030. There are no disputed facts about what services Boracchia provided to Biomet. Nor is there a factual dispute about whether Boracchia took title to any of Biomet's goods. Thus, the question on appeal is whether the district court erred by applying the U.C.C. to a contract for services. This Court should exercise its discretion to address this legal argument, even if it concludes that the contention was not properly preserved below. *Hormel v. Helvering,* 312 U.S. 552,

19

557 (1941); *Romain v. Shear,* 799 F.2d 1416, 1419 (9th Cir. 1986),

*cert. denied,* 481 U.S. 1050 (1987).

## B.  THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS, BECAUSE UNDER INDIANA LAW, THE APPLICABLE STATUTE OF LIMITATIONS IS 20 YEARS.

The statute of limitations applicable to this case is

supplied by section 34-11-2-11 (West Code Ann. 2008) of the

Indiana Code.  That section provides:

> An action upon contracts in writing other than those
> for the payment of money, and including home mortgages
> other than chattel mortgages, deeds of trust, judgments
> of courts of record, and for the recovery of the
> possession of real estate, must be commenced within ten
> (10) after the cause of action accrues.  However, an
> action upon contracts in writing other than those for
> the payment of money entered into before September 1,
> 1982, not including chattel mortgages, deeds of trust,
> judgments of courts of record, or for the recovery of
> possession of real estate, must be commenced within
> twenty (20) years after the cause of action accrues.[6]

The 20-year statute of limitations is generally applicable

to claims based on a written contract.  *INB Nat. Bank v. Moran*

*Elec. Service, Inc.*, 608 N.E.2d 702, 706 (Ind. App. 1993).

Indiana cases applying the 20-year statute support a conclusion

---

6 The term "contracts for the payment of money" refers to
contracts whose subject is money, such as promissory notes, bills
of exchange and surety contracts to repay indebtedness.  *Marter
v. City of Vincennes,* 82 N.E.2d 410, 411 (Ind. App. 1948)(citing
former Ind. Code 2-602 (5) & (6); *compare Perryman v. Motorist
Mut. Ins. Co.*, 846 N.E.2d 683, 688 (Ind. App. 2006)(§ 34-11-2-11
applicable to breach of insurance contract), *with Timberlake v.
J. R. Watkins Co.*, 209 N.E.2d 909, 913 (Ind.App. 1965)(34-11-2-11
not applicable to breach of surety contract to repay
indebtedness).

that it is applicable to this case. *See Meisenhelder v. Zipp Express, Inc.,* 788 N.E.2d at 927; *Indiana State Police Dept. v. Turner,* 577 N.E.2d 598, 600 (Ind. App. 1991); *Terre Haute v. Brown*, 483 N.E.2d 786, 788 (Ind. App. 1985); *Marter v. City of Vincennes*, 82 N.E.2d at 411-12 ; *Lewis v. Methodist Hosp., Inc.*, 326 F.3d 851, 854-55 (7th Cir. 2003). For example, in *Meisenhelder*, the Indiana court of appeal ruled that an employee's cause of action for breach of a promise, made in a written employment contract, was governed by Indiana Code § 34-11-2-11.[7] Similarly, in *Marter v. City of Vincennes*, the court ruled that the 20-year statute of limitations applied to a claim for breach of a written contract. 82 N.E.2d at 411-12; *accord Terre Haute v. Brown*, 483 at 786, 788; *Indiana State Police Dept. v. Turner,* 577 N.E.2d at 600; *Lewis v. Methodist Hosp.*, 326 F.3d at 854-55.

Applying the correct, 20-year statute of limitations, it is manifest that the complaint was timely filed. Plaintiff and Biomet entered into their written contract in 1979. Biomet purported to terminate the contract in 1995, although the relationship between the parties remained unchanged until 2006. Even if the cause of action accrued at the earliest possible date – June 30, 1995 -- (which appellants do not concede), the complaint is timely.

---

7 In *Meisenhelder*, applicable law provided for a 10-year statute of limitations, because the written contract had been entered into after 1982, in 1986. 788 N.E.2d at 930-31.

The applicability of the 20-year statute of limitations was not waived.  During the hearing on the motion for summary judgment, appellant specifically contended that under Indiana law, the applicable statute of limitations was 20 years and provided the court with citations supporting that contention.  I E.R. 31-33.  More significantly, the district court considered and rejected appellant's argument regarding the 20 year statute of limitation.  I E.R. 6-7.

Although the district court criticized counsel for raising additional cases during oral argument, the court nonetheless considered counsel's arguments.  The court also had before it all of the pertinent facts showing that the parties' contract did not involve a distributorship involving the sale of goods and subject to the U.C.C.  *E.g.* II E.R. 40, 46-47, 81-82.  Inferences from these facts must be construed in favor of Boracchia on summary judgment.  The facts set forth in Boracchia's response to the motion for summary judgment showed that under the contract, title did not transfer from Biomet to Boracchia.  Plaintiffs' response to the motion for summary judgment, Boracchia's own declaration, and the deposition of Biomet's former vice-president all described Boracchia as a sales representative.  II E.R. 39-40, 81-82.  Furthermore, if the response was not sufficiently clear that the U.C.C. did not apply, counsel's oral argument was.  I E.R. 16-17.  Counsel explained that the U.C.C. and its Indiana progeny, § 26-1-2-725, did not apply, but rather, that Indiana

provided for a 20-year statute of limitations for contracts in writing.  *Id.*

Accordingly, this Court should reverse the district court judgment granting summary judgment for the defendant.

## C.  ALTERNATIVELY, THE DISTRICT COURT ERRED IN CONCLUDING THAT BORACCHIA'S CLAIMS WERE TIME-BARRED, BECAUSE CALIFORNIA PUBLIC POLICY PROHIBITS APPLICATION OF FOREIGN LAW IN CALCULATING THE STATUTE OF LIMITATIONS.

The district court concluded that the choice of law clause required application of Indiana law.  I E.R. 6.  The court determined that under Indiana law any cause of action accrued when Biomet purported to terminate the parties' contract on June 30, 1995.  I E.R. 7-8. The court specifically found that Biomet's June 30, 1995, letter put Boracchia on notice that he would be giving up the long-term commission program unless he accepted the new offer from Biomet. I E.R. 7.  The court ruled that the statute of limitations on all of Boracchia's claims, including his claim under the California Independent Wholesale Representatives Act, Cal. Civ. Code § 1738.10 *et seq.*, began to run from the time Boracchia received notice of the termination, rather than the date Biomet actually terminated Boracchia as a sales representative.  *Id.*  The district court erred.  The court's conclusions disregarded controlling California precedent

23

regarding conflict of laws and accrual of the statute of limitations.

In particular, the court erred by failing to apply California law to the question of when the statute of limitations accrued.[8]  Under California law, the statute of limitations did not accrue until Biomet terminated Boracchia as a sales representative.  Conflict of laws principles adopted in California preclude applying a foreign statute of limitations when to do so violates a fundamental California policy.  In this case, the district court's application of Indiana's accrual standard, based on the notice that Biomet provided to Boracchia on June 30, 1995, extinguished Boracchia's rights under Cal. Civ. Code § 1738.10 *et seq.* and created an illegal oral contract in violation of § 1738.13(a).  As is discussed in greater detail below, the district court's failure to apply California law regarding accrual of the statute of limitations violated a fundamental policy of California.  Therefore, in deciding when the statute of limitations accrued, the court should have applied

---

8 As with Boracchia's first two arguments, this contention was not waived.  I E.R. 18-21.  The district court explicitly rejected Boracchia's contention, presented at oral argument, that under California law, the June 30, 1995, letter was an anticipatory repudiation.  I E.R. 9 n.3, 20-22.  Appellant incorporates the discussion, *supra*, at 18-23.  Additionally, if this Court concludes that the question was not adequately presented below, this Court should address this legal question for the first time on appeal.  Exceptional reasons support addressing this claim, because it is a purely legal question, and the fault occurred because of the personal difficulties of the attorney who prepared the written response.  *See* I E.R. 31; *Hormel v. Helvering,* 312 U.S. at 557.

California law.  Under California law, Biomet's June 30, 1995, letter constituted an anticipatory repudiation.

## 1.  California Law Regarding Conflict of Laws

The parties' agreement contains a clause under which Indiana law governed the contract.  II E.R. 53.  To determine whether a choice of law clause is enforceable, federal courts first look to the law of the forum state.  *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1997).

California follows the approach to conflict of laws set forth in the *Restatement Second of Conflict of Laws*, § 187.  California courts will enforce a contractual choice of laws clause unless either the chosen state has no substantial relationship to the parties or the transaction, or application of the law of the chosen state would subvert a fundamental California policy.  *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465 (1992); *see also* D*iscover Bank v. Superior Court,* 36 Cal. 4th 148, 174 (2005).  If the chosen state has a substantial relationship to the parties or transaction, but application of the law of the chosen state would be contrary to a fundamental California policy, then the court must decide whether California has a materially greater interest than the chosen state in the determination of the particular issue.  *Restatement, Second of Conflict of Laws*, § 187(2); *Nedlloyd Lines,* 3 Cal. 4th at 465.

Here, Boracchia was incorporated, conducted its business, and sold Biomet's products almost exclusively in California. Biomet is incorporated and based in Indiana and sells product all over the country and world.  California law must be applied, because application of Indiana law regarding notice-based accrual conflicts with a fundamental California policy regarding the protection of independent wholesale sales representatives. Furthermore, California has a materially greater interest than Indiana in determination of the issue.  Accordingly, this Court should decline to enforce the choice of law provision to the extent that its enforcement results in a ruling that the statute of limitations accrued on June 30, 1995.[9]

## 2. California Policy Regarding the Protection of Independent Wholesale Sales Representatives is Fundamental.

California has adopted an express policy of protecting the rights of wholesale sales representatives.  Cal. Civ. Code § 1738.10 *et seq.*  The California legislature has found:

> Independent wholesale representatives are a key
> ingredient to the California economy.  The Legislature
> further finds and declares the wholesale sales
> representatives spend many hours developing their
> territory in order to properly market their products,
> and therefore should be provided unique protection from
> unjust termination of the territorial market areas.
> Therefore, it is the intent of the Legislature, in

---

9 An oral, at-will contract, like the one Biomet contends existed with Boracchia after June 30, 1995, is illegal.  Cal. Civ. Code § 1738.13(a).  The court's conclusion that Biomet's June 30, 1995, letter was an effective termination, effectively sanctions what is an illegal contract under California law.

> enacting this act to provide security and clarify the contractual relations between manufacturers and their nonemployee sales representatives.

Cal. Civ. Code § 1738.10.

To further this goal, section 1738.13 enacted requirements governing the relationship between independent wholesale sales representatives and manufacturers, jobbers or distributors.[10] Section 1738.13(a) requires that there be a written contract between any independent wholesale sales representative and a manufacturer, jobber, or distributor.  The statute's protections cannot be waived.  Section 1738.13(e) provides: "No contract shall contain any provision which waives any rights established pursuant to this chapter.  Any such waiver is deemed contrary to public policy and void."

To be a fundamental policy under California law, a policy must be a substantial one.  *Brack v. Omni Loan Co.*, 164 Cal. App. 4th 1312, 1323 (Cal. App. 2008).  California courts have concluded that "the relative significance of a particular policy or statutory scheme can be determined by considering whether parties may, by agreement, avoid the policy or statutory requirement."  *Id.*  A state statute that cannot be waived by agreement establishes a fundamental policy.  *Id.; Hall,* 150 Cal. App. 3d at 418-19; *see also America Online, Inc. v. Superior*

---

9 While Indiana, too, has a law protecting wholesale sales representatives, see Ind. Code § 24-4-7 *et seq*, that law protects only wholesale sales representatives who solicit sales, *i.e.,* perform under the contract, in Indiana.  Because Boracchia's

*Court*, 90 Cal. App. 4th 1, 15 (2001)(applying analysis to forum selection clause).  Judged by this standard, California's Independent Wholesale Sales Representative Act establishes a fundamental policy.

Additionally, the Independent Wholesale Sales Representative Act is similar to other policies identified as fundamental. Examples of "fundamental" policies include consumer rights under the Consumer Legal Remedies Act, *America Online,* 90 Cal. App. 4th at 15, class action rights under the Corporate Securities Law of 1968, *Hall*, 150 Cal. App. 3d at 418-19, and rights provided in California's Finance Lenders Law.  *Brack*, 164 Cal. App. 4th at 1325-29.  Similarly, choice of law clauses that generally effect a waiver of plaintiffs' class actions rights are not enforceable in California.  *Klussman v. Cross Country Bank*, 134 Cal. App. 4th 1283, 1294-95 (2005).  California courts will not defer to foreign law in a manner that materially diminishes the rights of California citizens.  *Discover Bank,* 36 Cal. 4th at 162-63.

### 3. *California's Interest in the Contract is more Substantial than Indiana's.*

Because application of Indiana law would subvert a fundamental California policy, the choice of law clause may be applied only if Indiana's interest in the contract is greater than California's.  Here, the contrary is true.  Boracchia

---

performance occurred in California, he never fell within the scope of section 24-4-7.

resided in California, his company was based and incorporated in
California, and Boracchia was assigned a territory located
primarily in California and partially in Nevada.  Performance
under the contract occurred largely in California, partly in
Nevada, and not at all in Indiana.  Thus, under conflict of laws
principles, California law should apply to the question of
accrual.  *Brack v. Omni Loan*, 164 Cal. App. 4th at 1328-29.

More significantly, applying Indiana law to the question
when the cause of action under section 1738.10 accrued defeats
California's fundamental policy designed to protect independent
wholesale sales representatives.  *See id*.  California requires
that a contract between an independent sales representative and a
manufacturer be in writing.  Cal. Civ. Code § 1738.13(a).
Biomet's defense is based on its contention that, when it
purported to terminate the written contract in June 1995, Biomet
and Boracchia entered into an oral, at-will contract.  Such a
contract is expressly forbidden by section 1738.13(a) and the
parties cannot waive the requirement of a writing.  Thus,
applying Indiana law to determine the question when the statute
of limitations accrued subverts California's fundamental policy
of protecting independent wholesale sales representatives by,
among other things, requiring a written contract.  California's
interest in enforcing its own statutes requires that California
law be applied on the question of accrual of the statute of
limitations.

## 4.  Under California Law, The Statute Of Limitations Did Not Accrue Until June 9, 2006.

As previously explained, the district court concluded that the statute of limitations accrued on June 30, 1995, as the date on which Biomet notified Boracchia of the purported termination. I E.R. 7-8.  The court rejected Boracchia's contention that Biomet's actions in June of 1995 constituted an anticipatory repudiation of the contract.  I E.R. 6-9.  But, the correct application of California law to the statute of limitations question shows that the statute did not accrue until June 9, 2006, when Biomet terminated Boracchia as a sales representative.

California has a four-year statute of limitations, applicable to claims based on the breach of a written contract. Cal. Code Civ. P. § 337.  But, California law does not hold that a claim accrues when a party first learns of a possible breach or claimed termination.  *Cf.* I E.R. 7-8 and cases cited therein. California applies the principle of anticipatory repudiation to the question whether a contract has terminated.  In the context of a claimed termination, California law does not require a party to sue on notice of the termination, but allows the party to wait until termination occurs.  *Id.; accord Franconia Associates v. United States,* 536 U.S. 129, 143 (2002).

An anticipatory repudiation occurs when one party to a contract either informs the other party that it will not perform, or takes actions that demonstrate that it will be impossible for

30

the first party to perform.  *Restatement (Second) of Contracts*, §
250 (1979) (repudiation entails a statement or affirmative act
indicating that the promisor will commit a breach when
performance becomes due).  When an anticipatory repudiation
occurs, the injured party has the option of electing his remedy:
he may sue immediately for damages or wait until performance is
due and sue at that time.  *Romano v. Rockwell Int'l, Inc.*, 14
Cal. 4th 479, 489-90 (1996); *Franconia Associates v. United
States,* 536 U.S. 129, 143-44 (2002); *Roehm v. Horst,* 178 U.S. 1,
13 (1900).  When no action for anticipatory breach is brought,
the statute of limitations begins to run only from the time fixed
for performance under the contract.  *See Restatement of
Contracts,* § 322 at 483 (1932); *Franconia Associates v. United
States,* 536 U.S. at 143-44.

    In *Franconia Associates,* the Supreme Court made clear that
one party's renunciation of a contractual duty "`before the time
fixed in the contract … for performance'" is a repudiation."  536
U.S. at 143 (quoting 4 A. Corbin, Contracts § 959 p. 855 (1951)).
A repudiation ripens into a breach on the promisee's election: to
await the performance due under the contract or to declare the
contract terminated and immediately sue for damages.

    Additionally, whether a breach of contract is anticipatory
or not, "when there are ongoing contractual obligations the
plaintiff may elect to rely on the contract despite a breach, and
the statute of limitations does not begin to run until the

plaintiff has elected to treat the breach as terminating the contract." *Romano*, 14 Cal. 4th at 489 (citing 1 Witkin, Summary of California Law (9th ed. 1987), Contracts, §§ 800-801 at 723-24). The plaintiff is not required to treat the contact as abandoned on any particular breach. Instead, the plaintiff may rely on the contract until the defendant's performance becomes due and the plaintiff elects to treat the breach as terminating the contract. *Romano, id*. at 490.

Biomet's announcement that it no longer considered itself bound by the contract constitutes an anticipatory repudiation. *Romano v. Rockwell,* 14 Cal. 4th at 487-91. Boracchia was not required to sue immediately, because an immediate lawsuit substantially diminished the possibility that the matter would be satisfactorily resolved without litigation. *Id*. at 490; *accord Franconia Associates*, 536 U.S. at 148 ("Just as Congress may announce the Government's intent to dishonor an obligation to perform in the future through a duly enacted law, so may it retract that renouncement prior to the time for performance, thereby enabling the agency or contracting official to perform as promised."). Rather, Boracchia could and did wait to sue until he either suffered damages or until Biomet failed to provide some performance due under the contract.

The parties' behavior after Biomet's June 30, 1995, letter, supports a conclusion that the letter was an anticipatory repudiation and that thereafter, Boracchia chose to affirm the

contract.  Notably, from June 30, 1995, until June 9, 2006,
Biomet continued to interact with Boracchia under the same terms
and conditions as it had in 1979.  Although Biomet continued to
claim that it terminated the parties' agreement in 1995, Biomet
acted as though the contract was still in force by continuing to
deal with Boracchia under the same terms and conditions as set
forth in the written agreement.  Biomet maintained Boracchia as
its exclusive sales representative and paid Boracchia commissions
in accordance with the parties' 1979 contract.  Indeed, Biomet
continued to deal with Boracchia, even when he refused to sign
Biomet's proposed new contract or amendments.  Biomet's conduct
entitled Boracchia to rely on the 1979 contract at his election.
While he could have sued immediately, he was not required to do
so.

    The lack of damages until the 2006 termination further
supports the conclusion that Biomet's June 30, 1995, notice
constituted an anticipatory repudiation under California law.
Boracchia was not entitled to payments under the long-term
commission plan until he was 55 years old and no longer working
for Biomet.  In 1995, when Biomet purported to terminate the
contract, Boracchia was approximately 44 years old.  After June
30, 1995, he continued working for Biomet.  There was no benefit
or payment that Biomet owed to Boracchia in 1995 that he did not
receive.  It was not until 2006, when Boracchia had passed the
age of 55 and Biomet terminated him as a sales representative,

and subsequently refused to make payments under the long-term commission plan, that the anticipatory repudiation ripened into a breach.  These facts show that the statute of limitations did not begin to run until, at the earliest, May 30, 2006, when Biomet informed Boracchia that it was going to terminate him as a sales representative.

Finally, practical considerations support the conclusion that the statute accrued in 2006, when Biomet terminated Boracchia as its agent.  It is unrealistic and unfair to expect a sales representative to sue his manufacturer/supplier for breach of contract, at least while the parties' relationship is ongoing and unchanged.  *Romano v. Rockwell,* 14 Cal. 4th at 489.  Boracchia had no reason to sue Biomet while they had a positive, ongoing, and unchanged business relationship: commencing suit likely would have resulted in termination of his position as a sales representative at a substantial cost to him.  This is particularly true because, until Biomet terminated Boracchia as a sales representative, he did not suffer any damage.  *Id.* at 490.

Boracchia suffered damages when Biomet terminated him as a "distributor", i.e., a sales representative.  At that point, the anticipatory repudiation ripened into a full breach of the contract, because Biomet terminated him without good cause in violation of the 1979 agreement.  Boracchia was further damaged when Biomet refused to begin compensating him under the long-term

34

commission plan.  Biomet's 2006 actions triggered Boracchia's obligation to undertake legal action.  He did so within one year.

The district court erred in concluding that Boracchia's cause of action accrued on June 30, 1995, when Biomet purported to terminate the agreement.  The district court mistakenly applied Indiana law and disregarded California law regarding anticipatory repudiation. I E.R. 9, n.3.  While Boracchia may not have used the term anticipatory repudiation in his written response, the facts and legal argument presented in the written papers and at oral argument plainly presented this important argument.  This Court should reverse the district court's Order granting summary judgment, because the cause of action did not accrue until Biomet terminated Boracchia on June 9, 2006.

## VIII.  CONCLUSION

Based upon the foregoing arguments, this Court should reverse the district court order granting summary judgment and remand for further proceedings.

Dated: August 29, 2008

Respectfully submitted,

_____
MITCHELL A.  KRAMER
BARBARA H. KRAMER
KAREN L. LANDAU
Attorneys for Appellant
Edward Boracchia

# STATEMENT OF RELATED CASES

Undersigned counsel is unaware of any related cases.

# CERTIFICATE OF COMPLIANCE

I certify that:

<u>x</u>  1.  Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Cir. R. 32-1, the attached opening brief is:

 ___ Proportionately spaced, has a typeface of 14 points or more and contains _____ words;

 or is

 <u>x</u> Monospaced, has 10.5 or fewer characters per inch and contains <u>8,059</u> words or ____ lines of text (opening briefs must not exceed 14,000 words or 1300 lines of text);

 or

___  2.  The attached brief is not subject to the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because:

 ____  This brief complies with Fed. R. App. P. 32(a)(1)-(7) and is a principal brief of no more than 30 pages or a reply brief of no more than 15 pages. Ninth Cir. R. 32-1.


    _____
      Karen L. Landau

PROOF OF SERVICE

I, the undersigned, declare:

I am a citizen of the United States, over the age of 18 years and not a party to the within cause; my business address is

2626 Harrison St., Oakland, California 94612.

On September 3, 2008, I served two copies of the attached

Appellant's Opening Brief

and one copy of the attached

Appellant's Excerpts of Record, Volumes I & II

upon the interested parties herein, by causing a true and correct copy of said documents to be enclosed in a sealed envelope and mailed by First-Class Mail, postage prepaid, or dispatched to a third party commercial carrier for delivery within three days, addressed as follows:

Tory E. Griffin, Esq.
Downey, Brand, et al.
555 Capitol Mall, 10th Fl.
Sacramento, CA 95814-4686

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on September 3, 2008.

_____
Karen L. Landau